**Michael W. Dotts, Esq.**
 **DOTTS LAW OFFICE**
140 Aspinall Avenue, Suite 201-B
Hagatna, Guam 96910
Telephone: (671) 588-8866
Facsimile: (671) 472-9616
Email: mdotts@dottslaw.law

*Attorneys for Plaintiff De-Anna Taijeron*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF GUAM

| | |
|---|---|
| DE-ANNA TAIJERON,<br><br>Plaintiff,<br><br>v.<br><br>UGOCHUKWU AKOMA,<br><br>Defendant. | CIVIL CASE NO. _____<br><br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

## I.
## JURISDICTION AND VENUE

1. This Court has diversity jurisdiction pursuant to the provisions of 28 U.S.C. § 1332(a)(1). The Plaintiff is a resident of Hawaii, and the Defendant is a resident of Guam. The amount of the claim exceeds $75,000.00.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this cause of action occurred in Guam, a United States territory.

## II.
## PARTIES

3. Plaintiff De-Anna Taijeron ("Plaintiff" or "Taijeron") is an adult female. She is a citizen of the United States and resides in Honolulu, Hawaii.

4. Defendant Ugochukwu Akoma ("Defendant" or "Akoma") is an adult male. He is a citizen of the United States and resides on Guam.

## III.
## FACTS

**A.      Factual Background**

5. Defendant is a medical doctor and operates the Hepzibah Family Medicine Clinic on Guam.

6. Plaintiff sought treatment from Defendant for depression and anxiety arising from a past sexual assault. Plaintiff had been a victim of rape when she was a child. The trauma of the rape had continued to haunt her into adulthood, and she sought treatment from Defendant for her mental health issues.

7. On October 10, 2021, Plaintiff went to her first appointment with Defendant. Plaintiff informed Defendant of her past trauma and provided Defendant with a letter from her counselor recommending that she be placed on certain medication for depression and anxiety. Defendant then placed her on a different medication than what the counselor had recommended and different from what she had been previously prescribed. Defendant also recommended that Plaintiff not see her counselor anymore.

8. The next day, October 11, 2021, the first full day of Plaintiff being on the new medication, Plaintiff messaged Defendant informing him that the new medication had increased her anxiety and depression. Defendant called her and told her to continue taking the medication.

9. On October 12, 2021, Plaintiff called Defendant and informed him that she was feeling worse. She told him she was at work and did not feel right. Defendant told Plaintiff to give him Plaintiff's manager's number, and that Plaintiff was having a mental breakdown.

Defendant told Plaintiff's manager to take her to Guam Behavioral Health. Plaintiff did not want to go to Guam Behavioral Health so after speaking with Defendant went to his clinic instead.

10. Plaintiff saw the Defendant on October 12, 2023, and Defendant's clinic, and the Defendant told her to continue the new medication and he prescribed her an additional medication to take, an anticonvulsant or antiepileptic drug used to treat panic attack symptoms.

11. From October 13, 2021, to October 22, 2021, Plaintiff continued to inform Defendant of her concerns regarding the new medications he had prescribed. Defendant continued to tell her to take the medications and to see him on October 23, 2021, to discuss her medication, assist him with a Veteran's Day speech he wanted her help with, and interview her for a possible office administrative position.

**B.     The First Sexual Assault**

12. On October 23, 2021, Plaintiff went to Defendant's clinic. Others were at the clinic including some veterans. Defendant asked the Plaintiff to follow him into the empty waiting room.

13. Plaintiff and Defendant sat down in the empty room with Defendant on Plaintiff's right side. Defendant then put his hand on Plaintiff's thigh. Plaintiff's mind froze and she began to panic and was scared. Defendant asked her how she felt and if she could handle working in his office with her mental illnesses. Plaintiff said that she wanted to be treated for her anxiety and depression.

14. Defendant got up to take a call on his cell phone and then sat next to Plaintiff again, and took her hand and placed it on his crotch. Defendant then told Plaintiff "I like you." Plaintiff was confused and answered, "You like me, like you want me to work for you?" Defendant said "No, I like you more than I should." Plaintiff was wearing a mask because COVID was still an issue in October, 2021, and Defendant then pulled the Plaintiff's mask down and kissed her. He

3

shoved his tongue into her mouth. He then stood her up, pulled her mask down further and continued to kiss her three more times, each time shoving his tongue in her mouth.

15. Defendant then took Plaintiff back into the room where the veterans were at and told her to wait while he assisted them.

16. Plaintiff then received a message from her boyfriend who lives in Hawaii. She told him she was not okay. Her boyfriend then called her on the phone and stayed on the line trying to help her, but the phone lost connection.

17. Defendant then told Plaintiff to follow him in his break room and Plaintiff did so. Defendant closed the door and pushed her against the desk, touched her vagina through her clothes, and tried to pull her zipper down. While doing this, he pulled her mask down again (Plaintiff had pulled it back up) and began to kiss her again, shoving his tongue in her mouth again, and continued rubbing her vagina. Plaintiff asked him several times to stop but he continued.

18. Then a veteran called Defendant and he stopped and told Plaintiff to wait in the break room. Plaintiff tried to think how she could escape but could not think and was afraid. She messaged her boyfriend in Hawaii about what was happening, and he called her. She kept him on the phone as she went to get her things from Defendant's office where he was seeing the veterans. Defendant returned to the break room and Plaintiff told him that she needed to leave and check her father. Defendant is the physician for Plaintiff's father, and he knows that Plaintiff's father is seriously ill and disabled.

19. Defendant told Plaintiff not to leave, and that she does not need to check on her father. Defendant then sat her on the office chair, pulled her mask down, kissed her shoving his tongue on her mouth and continued to rub her vagina. Plaintiff kept telling him to stop but he continued to lean the chair back and rubbed her vagina and kissed her.

4

20. Then someone from outside the room called Defendant. Defendant told Plaintiff to wait. Plaintiff told him that she had to leave and then she left.

**C.    The Second Sexual Assault**

21. When Plaintiff reached home, Plaintiff's father was upset that he forgot his lab paper at Defendant's office after his appointment with Defendant earlier in the day. Plaintiff's father asked her to go back and get his lab paper. Plaintiff could not think of how to get out of the request without telling her father what had just happened and returned to Defendant's office to retrieve her father's lab paper. Plaintiff did not tell her father what happened at Defendant's office because her father is not well, and she was concerned of how what had been done to her would affect him.

22. Plaintiff went to Defendant's office and parked her car in front of the doors to be able to leave quickly once her father's lab paper was retrieved. The door was locked. She asked Defendant to open the door so she could get her father's lab paper. Plaintiff asked a veteran who was waiting outside if he wanted to go in, but he said no. Defendant let Plaintiff in and gave her his keys and told her to wait in his car in the basement. She said no and that she was there to get her father's lab paper.

23. Defendant followed Plaintiff behind the counter where she was looking for her father's lab paper and began grinding his penis on her. He lifted her shirt to look at her butt and she asked him to stop. Plaintiff told Defendant that there was a camera up on the wall in front of them and Defendant then pulled her behind the wall and sat her on an office chair.

24. Defendant pulled down her mask, kissed her shoving his tongue in her mouth and rubbed her vagina. Plaintiff continued to tell him to stop and tried to remove his hands, but he continued on. Defendant tried to pull her pants zipper down and she again said no and told him to

5

Case 1:23-cv-00023   Document 1   Filed 10/18/23   Page 5 of 11

stop. Defendant then pulled out his penis and placed Plaintiff's hand on it and asked her to kiss it. Plaintiff said no over and over again and told Defendant to stop. He continued and tried to pull down her zipper and told the plaintiff to let him see her vagina.

25. Defendant then told Plaintiff that she had only two options: to either stay in his car in the basement or go to her car and wait for him. Plaintiff could not think and said she will wait in the office. A veteran called Defendant and he went to the break room.

26. Plaintiff then asked her boyfriend to call her so she could say that it was her father on the phone, and she could go home. Her phone rang and she pretended that it was her father. Defendant told her not to leave and again told the Plaintiff that her father was not breastfeeding. Plaintiff left.

27. Plaintiff could not think so she drove to Mobil Agana and cried. Plaintiff did not want to go home and tell her family because her father has a heart condition and was Defendant's patient. Plaintiff was afraid that this news would kill him as the Plaintiff's father has had previous heart attacks.

28. Plaintiff then called her mother, and she came to the Mobil station. She told her mother what happened. While Plaintiff was talking to her mother, Defendant called her asking where she was. Plaintiff was scared and told Defendant she was on the road and had to go.

29. Plaintiff then emailed her counselor for help. She also called Tumon precinct where an officer answered but Plaintiff was too scared to tell the officer what happened because a lot of people from Defendant's veteran's group are police officers.

30. Plaintiff and her mother then went home and told her father. They called the FBI and reported the incident.

31. On October 24, 2021, Plaintiff's counselor responded to her and scheduled an

6

emergency session. Her counselor encouraged her to go to the police, file a report, and contact the Guam Medical Board. Plaintiff followed this advice.

**D.     The Injury**

32.     Plaintiff is a survivor of rape and was a victim of a sexual assault by a convicted pedophile. She suffers from depression and anxiety and Post Traumatic Stress Disorder ("PTSD"). She has trust issues and low self-confidence. Plaintiff attributes this to the trauma of the rape and sexual assault she suffered as a child and now to what the Defendant did to her on October 23, 2021.

33.     Plaintiff has difficulty with mood swings, often cries, and is often afraid and fearful. Plaintiff attributes this to the trauma of the childhood rape and the actions of Defendant.

34.     Because of the trauma Plaintiff suffered as a child, she had reached out to Defendant, a medical professional, for help in managing her depression and anxiety. Defendant was fully aware of her history and emotional vulnerability. However, she was drugged and violated by the Defendant, betraying that trust. What little confidence and independence she had before the encounters with Defendant is now gone.

35.     Plaintiff did not leave her house for two months following the assaults by Akoma. Her father neglected his health. The psychological impact of having been sexually assaulted by a person of authority and a doctor providing her care resulted in Plaintiff's depression, anxiety, and PTSD to skyrocket. She relives this trauma daily. She is now fearful of doctors and needs someone to accompany her during appointments. Plaintiff has had to move from Guam from fear of Defendant and has a difficult time simply living.

36.     The trauma Plaintiff experienced resulted in an actual loss of income in an amount to be proven at trial but not less than $9,000.00. Plaintiff was unable to work immediately after the

assaults and left employment in November 2021 to relocate to Hawaii out of fear of the Defendant. Plaintiff had no employment for about four months following the assaults and her actual monetary loss is about $9,000.00.

37. Plaintiff had other consequential damages in an amount to be proven at trial related to relocating to Hawaii and medical treatment.

38. The sexual assault caused Plaintiff physical pain and suffering, and Plaintiff seeks damages for this pain and suffering in an amount to be proven at trial.

39. The sexual assault also caused Plaintiff severe emotional distress and mental pain and anguish and Plaintiff seeks damages for these emotional injuries in an amount of at least $500,000.

40. Plaintiff seeks punitive or exemplary damages in an amount of not less than $81,000.00, that being nine times the actual damages. Plaintiff may seek a greater amount of punitive damages in accordance with proof and as a multiple of her pain and suffering and emotional distress damages.

## V.
## CAUSE OF ACTION: SEXUAL ASSAULT

41. Plaintiff incorporates paragraphs 1 through 40 as if restated in full here.

42. Defendant committed the misdemeanor offense of Fourth Degree Criminal Sexual Conduct by engaging in unwelcome sexual contact with Plaintiff on October 23, 2021, at the Hepzibah Family Medicine Clinic on Guam. 9 GCA § 25.30 (a1) (a2) and (b) (two counts).

43. Defendant committed the offense of Fourth Degree Criminal Sexual Conduct by engaging in sexual contact with Plaintiff where force or coercion was used to accomplish the sexual contact and where Defendant knew or had reason to know that Plaintiff was mentally impaired, mentally incapacitated, or physically helpless. 9 GCA § 25.30 (a1) (a2) and (b).

44. Defendant unreasonably caused the physical and emotional health of Plaintiff to be harmed.

45. Defendant used his position of trust to get Plaintiff alone and to take advantage of her. He knew she was having problems with her medication and was particularly vulnerable when he assaulted her.

46. As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered (and still suffers) these injuries: (a) great pain of mind and body; (b) shock; (c) emotional distress; (d) physical manifestations of emotional distress; (e) embarrassment; (f) loss of self-esteem; (g) disgrace; (h) humiliation; (i) loss of enjoyment of life; (j) depression; (k) anxiety; (l) fear; and (m) future expenses for medical/psychological treatment, therapy, and counseling.

47. Plaintiff believes, and alleges based on that belief, that the issues she has had with her personal life after the incident on October 23, 2021, described above, and the emotional distress she has been suffering following October 23, 2021, are a direct and actual result of Defendant's sexual assaults upon her that occurred on October 23, 2021.

48. As a direct and proximate result of Defendant's conduct, Plaintiff's trust in him as her treating physician has been eroded. Defendant knew that Plaintiff was sexually abused as a child and took advantage of his knowledge of that history and her vulnerability.

49. Defendant violated a physician's ethical responsibility to his patient by putting her on drugs and then taking advantage of her mental and physical weakness to resist, making his crime particularly heinous, and supporting an award of punitive damages in an amount to be proven at trial.

50. Defendant acted with malice and oppression, being the person entrusted by Plaintiff with her treatment. Plaintiff is therefore further entitled to exemplary and punitive damages.

## VI.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Honorable Court for the following relief:

a.  Actual and consequential damages in an amount not less than $9,000.00 and in accordance with proof.

b.  Pain and suffering and emotional distress damages in an amount according to proof but not less than $500,000.00.

c.  Exemplary and punitive damages in an amount in accordance with proof.

d.  Reasonable attorneys' fees and costs if available.

e.  For such and other and further as the Court deems just.

## VII.
## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues and claims so triable.

Dated this 18th day of October 2023.

> Dotts Law Office
> Attorney for Plaintiff De-Anna Taijeron
>
> By: /s/
>     MICHAEL W. DOTTS

# VIII.
# VERIFICATION

I, DE-ANNA TAIJERON, hereby verify under penalty of perjury that the statements contained in this Complaint are true and correct to the best of my knowledge, information, and belief.

Executed this 17th day of October 2023, in Honolulu, Hawaii.


DE-ANNA TAIJERON

11

Case 1:23-cv-00023   Document 1   Filed 10/18/23   Page 11 of 11